**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **HILL PHOENIX, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **FILE NO. _____** |
| **JASON TAGHIKHANI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DAMAGES

Hill Phoenix, Inc. ("Plaintiff" or "Hill Phoenix") files this Complaint against Defendant Jason Taghikhani ("Taghikhani"), respectfully showing this Court as follows:

## INTRODUCTION

This is an action against a former employee who signed relocation and bonus agreements agreeing to reimburse Hill Phoenix for certain expenses and bonuses if he did not work for Hill Phoenix for two (2) years. Defendant voluntarily terminated his employment with Hill Phoenix before his two-year anniversary. Therefore, Defendant is liable to Hill Phoenix for damages, as more fully described below.

Hill Phoenix, consistent with the relevant contracts, previously sued Defendant in the Circuit Court of Cook County Department, Law Division. Defendant moved to dismiss for *forum non conveniens*. As a condition of so moving, under Illinois Supreme Court rules, Defendant was required to agree to accept service of this action. The Circuit Court of Cook County dismissed the prior actions on this ground and under this condition.

## BACKGROUND

1.  Hill Phoenix is a leading manufacturer of display cases, refrigeration systems, power systems and services for supermarkets, warehouse stores and other participants in the retail food industry. It has a facility in Conyers, Rockdale County, Georgia.

2.  At one point, Defendant was employed by Hill Phoenix.

3.  However, Defendant left Hill Phoenix to work for a competitor – Exide Technologies, now Stryten Manufacturing.

## JURISDICTION AND VENUE

4.  Hill Phoenix is a Delaware corporation maintaining its principal place of business in Conyers, Georgia.

5.  Taghikhani is an Iowa resident.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Taghikhani under O.C.G.A. § 9-10-91(1) and because Taghikhani has consented to personal jurisdiction in this Court. *See* correspondence from defense counsel, attached hereto as **Exhibit A**.

8. Venue is proper in this Court, and Taghikhani has consented to venue in this Court. *See id.*

9. Defendant agreed to accept service of this action. *See id.*

## DEFENDANT JASON TAGHIKHANI

10. In the winter of 2019, Hill Phoenix and Taghikhani discussed the possibility of Taghikhani joining Hill Phoenix as an employee.

11. In January 2019, Hill Phoenix extended an offer to Taghikhani for the position of Superintendent working at the Hill Phoenix location in Richmond, Virginia.

12. At the time of the offer, Taghikhani was living in Pineville, Florida. As part of the negotiations over Taghikhani's possible employment, Hill Phoenix and Taghikhani discussed relocation expenses and a starting bonus for Taghikhani's relocation to Richmond, Virginia.

13.   Ultimately, Hill Phoenix and Taghikhani agreed that Taghikhani would receive a lump-sum, one-time bonus of $20,000. *See* "Bonus Agreement," attached hereto as **Exhibit B**. This bonus was detailed in the Bonus Agreement that Hill Phoenix sent to Taghikhani on February 6, 2019, and that Taghikhani accepted and counter-signed on February 7, 2019. Hill Phoenix paid the entire $20,000 bonus to Taghikhani on March 22, 2019.

14.   Taghikhani's start date with Hill Phoenix was March 11, 2019, as the Bonus Agreement contemplated. (Ex. B, p. 1.)

15.   Hill Phoenix and Taghikhani also agreed on the terms of a separate contract under which Hill Phoenix agreed, subject to certain conditions, to reimburse Taghikhani for the expenses he incurred in relocating to Virginia. *See* "Relocation Agreement," attached hereto as **Exhibit C**. Hill Phoenix reimbursed Taghikhani for more than $72,000 in relocation expenses under the Relocation Agreement.

16.   Both the Bonus Agreement (Ex. B, p. 2) and the Relocation Agreement (Ex. C, ¶ 4) expressly require Taghikhani to remain at Hill Phoenix for at least two years as a condition to receiving and retaining the payments from Hill Phoenix. Under the Bonus Agreement, Taghikhani must return the $10,000 bonus if his employment ends within 24 months of his March 11, 2019 start date for any reason. Under the Relocation Agreement, Taghikhani must return all reimbursed relocation

expenses to Hill Phoenix if he voluntarily terminates his employment within two years of his effective date of transfer – here, his March 11, 2019 start date.

17.    Taghikhani voluntarily terminated his employment with Hill Phoenix in August 2019, with his last day of work being August 2, 2019. This voluntary departure occurred less than two years after Taghikhani started at Hill Phoenix. Under the terms of the contracts, Taghikhani must repay the $20,000 bonus and the more than $72,000 in relocation expenses.

18.    Hill Phoenix sent Taghikhani a demand letter for reimbursement of $82,513.98 ($10,000 for sign on bonus, $72,513.98 in relocation expenses) on August 2, 2019. *See* August 2, 2019 Demand Letter to Taghikhani, attached hereto as **Exhibit D**. Taghikhani has failed to reimburse Hill Phoenix to date.

## COUNT I– BREACH OF CONTRACT
### (Bonus Agreement)

19.    Plaintiff adopts and re-alleges paragraphs 1 through 18 as if fully stated herein.

20.    Taghikhani, a former employee of Hill Phoenix, entered into an agreement, the Bonus Agreement, in which Taghikhani agreed to repay a $20,000 bonus if he voluntarily terminated his employment within twenty-four months of his start date. (Ex. B.)

21.     Under the Bonus Agreement, Hill Phoenix was required to pay the $20,000 bonus to Taghikhani. (Ex. B, p. 2.) The bonus was to be paid in two installments – the first within thirty days of Taghikhani's start date and the second within a year.  As a courtesy to Taghikhani, Hill Phoenix paid both installments, for a total of $20,000, to Taghikhani on March 22, 2019.

22.     Taghikhani voluntarily terminated his employment on August 9, 2019 after only five months of employment, and far less than twenty-four months after Taghikhani's start date of March 11, 2019.

23.     Hill Phoenix performed its obligations under the Bonus Agreement.

24.     The Bonus Agreement is a valid and binding contract and Taghikhani has breached the Bonus Agreement by failing to repay the one-time bonus, despite demand.

25.     Therefore, Taghikhani is liable for reimbursement of the $20,000 bonus.

## COUNT II – BREACH OF CONTRACT
### (Relocation Agreement)

26.     Plaintiff adopts and re-alleges paragraphs 1 through 25 as if fully stated herein.

27.     Taghikhani, a former employee of Hill Phoenix, entered into the Relocation Agreement, wherein Taghikhani agreed to repay Hill Phoenix 100% of

relocation expenses if he voluntarily terminated his employment within two years of his effective date of transfer, March 11, 2019. (Ex. C, ¶ 4).

28.    Hill Phoenix performed its obligations under the Relocation Agreement, as it reimbursed Taghikhani a total of $72,513.98 for relocation expenses.

29.    Taghikhani voluntarily terminated his employment with Hill Phoenix with an employment termination date of August 9, 2019. The August 9, 2019 termination date was within two years after Taghikhani's March 11, 2019 effective date of transfer to Hill Phoenix.

30.    The Relocation Agreement is a valid and binding contract and Taghikhani has breached the Relocation Agreement by failing to repay Hill Phoenix, despite demand.

31.    Therefore, Taghikhani is liable for reimbursement of the relocation expenses in an amount to be proven at trial, but in no event less than $72,513.98.

## COUNT III – ATTORNEYS' FEES

32.    Plaintiff adopts and re-alleges paragraphs 1 through 31 as if fully stated herein.

33.    By reason of the foregoing, Defendant has acted in bad faith, been stubbornly litigious, and put Hill Phoenix to unnecessary trouble and expense.

Therefore, pursuant to O.C.G.A. § 13-6-11, Hill Phoenix is entitled to recover its reasonable attorneys' fees in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court issue the following relief:

a.  Summons issue according to law;

b.  That Plaintiff be awarded damages in an amount to be proven at trial, but in no event less than $92,513.98 plus interest;

c.  That Plaintiff be awarded its costs and expenses of litigation, including its reasonable attorney's fees; and

d.  For all other relief that this Court deems just and proper.

Respectfully submitted this 26th day of May, 2021.

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
mames@balch.com
tbishop@balch.com

*/s/ Matthew B. Ames*
MATTHEW B. AMES
Georgia Bar No.: 015898
TYLER P. BISHOP
Georgia Bar No.: 566705

*Attorneys for Plaintiff Hill Phoenix, Inc.*

# **EXHBIT A**



**From:** Gary R. Kessler <gkessler@martensonlaw.com>
**Sent:** Friday, May 7, 2021 4:17 PM
**To:** Bishop, Tyler P. <tbishop@balch.com>; 'keith.scott@motrexllc.com' <keith.scott@motrexllc.com>
**Cc:** Ames, Matt <mames@balch.com>; Jennifer B. Greene <jgreene@martensonlaw.com>
**Subject:** Re: Follow-up from April 21 conference call

**[External Email] Please use caution.**

We would agree to **separate** lawsuits in Fulton against Judd and Holmes and a **separate** lawsuit against Taghikhani  in Rockdale, although we reserve the right to remove to federal court with Taghikhani if appropriate.

So yes, that would resolve all service, venue and jurisdictional issues.   Regards, Gary.

**Gary R. Kessler** | Attorney at Law
**Of Counsel for Martenson, Hasbrouck & Simon LLP**
2573 Apple Valley Road NE
Atlanta, Georgia 30319
T: (404) 909-8100 | C: (404) 915-7207
gkessler@martensonlaw.com | martensonlaw.com

Member of the Bars of Georgia, Florida and Alabama
Board Certified in Labor and Employment Law by the Florida Bar

 

**From:** "Bishop, Tyler P." <tbishop@balch.com>
**Date:** Friday, May 7, 2021 at 4:11 PM
**To:** Gary Kessler <gkessler@martensonlaw.com>, "'keith.scott@motrexllc.com'" <keith.scott@motrexllc.com>
**Cc:** "Ames, Matt" <mames@balch.com>, "Jennifer B. Greene" <jgreene@martensonlaw.com>
**Subject:** RE: Follow-up from April 21 conference call

Gary, thanks for your response. To make sure I'm understanding everything, you're telling me that if we file:

1. **One lawsuit against both Judd and Holmes in <u>Fulton</u>; and**
2. **One lawsuit against Taghikhani alone in <u>Rockdale</u>**

then we will have resolved all issues of service, jurisdiction, and venue as to each defendant?

Please confirm I have gotten all this correct. If so, I will take this to our folks and get back to you promptly.

Thanks,
Tyler

---

**From:** Gary R. Kessler <gkessler@martensonlaw.com>
**Sent:** Friday, May 7, 2021 3:48 PM
**To:** Bishop, Tyler P. <tbishop@balch.com>; 'keith.scott@motrexllc.com' <keith.scott@motrexllc.com>
**Cc:** Ames, Matt <mames@balch.com>; Jennifer B. Greene <jgreene@martensonlaw.com>
**Subject:** Re: Follow-up from April 21 conference call

**[External Email] Please use caution.**

Tyler:  I wanted to respond to your below email of May 5, 2021 in the above referenced manner.

 We  willing to accept service on behalf of Michael Judd, Robert Holmes and Jason Taghikhani.  Both Michael Judd and Robert Holmes reside in Fulton County , Georgia and  Jason Taghikhani resides in Iowa.

 Our offer for a Rockdale  venue  to the court in Illinois in Defendant's motions to dismiss was made as part of  our alternative argument that if the court dismissed a case based on *forum non conveniens*, we could accept a Rockdale venue. That offer was not made as part of our "lack of  jurisdiction" argument.   As is clear from a reading of the court's Order in all three cases, the primary basis for the dismissal was a lack of jurisdiction. The *forum non conveniens* conclusion was an alternative "if the court did have proper  jurisdiction"  holding by the court.   See Order of Judd, Holmes and Taghikhani, p. 5, 7.  As a consequence,  we are not willing for the venue for all three cases to be in Rockdale.

Regarding any  lawsuit  filed against Jason Taghikhani , since he is an out-of-state resident, venue would be proper in Rockdale County as set out in O.C.G.A . Sec. 9-10-93 (out of state resident defendants).

Regarding the lawsuits to be filed against Michael Judd and Robert Holmes,  since their lawsuits  were dismissed by the Illinois court  on jurisdictional grounds, the offer of a Rockdale venue was inapplicable and  proper venue  would be Fulton County as provided for in  O.C.G.A. .Sec. 9- 10-31 (resident defendants).

Please convey our position to your client and let us know how they intend  to proceed in this matter.  Regards, Gary.

**Gary R. Kessler** | Attorney at Law
**Of Counsel for Martenson, Hasbrouck & Simon LLP**
2573 Apple Valley Road NE
Atlanta, Georgia 30319
T: (404) 909-8100 | C: (404) 915-7207
gkessler@martensonlaw.com | martensonlaw.com

Member of the Bars of Georgia, Florida and Alabama
Board Certified in Labor and Employment Law by the Florida Bar

 

**From:** "Bishop, Tyler P." <<u>tbishop@balch.com</u>>
**Date:** Wednesday, May 5, 2021 at 8:53 AM
**To:** Gary Kessler <<u>gkessler@martensonlaw.com</u>>, "'keith.scott@motrexllc.com'" <<u>keith.scott@motrexllc.com</u>>
**Cc:** "Ames, Matt" <<u>mames@balch.com</u>>
**Subject:** RE: Follow-up from April 21 conference call

Good morning, Gary. Thanks for your response. I appreciate you checking on Holmes and Taghikhani's current whereabouts and look forward to the results of your research.

In the conclusion paragraph of each of the Motions to Dismiss in the Illinois action, Defendants make the following statement (I used Taghikhani's Motion because I located it first): "the Court should dismiss the action pursuant to Illinois Supreme Court Rule 187 based on *forum non conveniens* to ***allow for refiling in the State Court of Rockdale County, Georgia***, the county where the principal office of Hill Phoenix is located. Taghikhani will accept service of the complaint in this matter and will waive any statute of limitations defenses which he might otherwise have as a result of the refiling of this matter in Georgia pursuant to the conditions of Illinois Supreme Court Rule 187(c)." (emphasis added). I take this statement to mean Defendants each consent to venue and jurisdiction in Rockdale County. Otherwise, I struggle to understand the purpose of including the above-emphasized language.

We want to handle litigation in the most cost-efficient way possible. We hope you guys are on board with that idea. To that end and since we have a dialogue open, we would appreciate you telling us whether Judd, Holmes, and/or Taghikhani will contest venue and jurisdiction. It is hardly in any of our interests to file another lawsuit in which we'll fight about venue and jurisdiction.

Thanks again, and look forward to hearing from you,
Tyler

**From:** Gary R. Kessler <<u>gkessler@martensonlaw.com</u>>
**Sent:** Wednesday, May 5, 2021 7:57 AM
**To:** Bishop, Tyler P. <<u>tbishop@balch.com</u>>; 'keith.scott@motrexllc.com' <<u>keith.scott@motrexllc.com</u>>
**Cc:** Ames, Matt <<u>mames@balch.com</u>>
**Subject:** Re: Follow-up from April 21 conference call

**[External Email] Please use caution.**

Good morning Tyler.  We will accept service but I don't think we ever agreed to venue or jurisdiction in Rockdale.  If we did, let us know when we did that and in which filing.
While I am still checking on where Holmes and Taghikhani are currently living,  I do know that Judd lives in Georgia and does not live in Rockdale.   Will get back with you regarding Holmes and Taghikhani.  Regards, Gary.

**Gary R. Kessler** | Attorney at Law
**Of Counsel for Martenson, Hasbrouck & Simon LLP**

2573 Apple Valley Road NE
Atlanta, Georgia 30319
T: (404) 909-8100 | C: (404) 915-7207
gkessler@martensonlaw.com | martensonlaw.com

Member of the Bars of Georgia, Florida and Alabama
Board Certified in Labor and Employment Law by the Florida Bar

 

---

**From:** "Bishop, Tyler P." <tbishop@balch.com>
**Date:** Monday, May 3, 2021 at 2:00 PM
**To:** Gary Kessler <gkessler@martensonlaw.com>, "'keith.scott@motrexllc.com'" <keith.scott@motrexllc.com>
**Cc:** "Ames, Matt" <mames@balch.com>
**Subject:** Follow-up from April 21 conference call

Gary and Keith,

Matt forwarded me your email and asked me to respond. He is out of town today.

Thanks for your note, and I'm sorry to hear we can't get closer. We're prepared to file and understand based on your pleadings in the Illinois lawsuit that you will accept service and your clients will consent to jurisdiction and venue in Rockdale County, Georgia. Do we have all of this correct?

Thank you,
Tyler



Tyler P. Bishop, Attorney, Balch & Bingham LLP
30 Ivan Allen, Jr. Blvd., NW • Suite 700 • Atlanta, GA 30308-3036
t: (404) 962-3569   f: (866) 230-9974   e: tbishop@balch.com
www.balch.com

---

CONFIDENTIALITY:  This email and any attachments may be confidential and/or privileged and are therefore protected against copying, use, disclosure or distribution.  If you are not the intended recipient, please notify us immediately by replying to the sender and double deleting this copy and the reply from your system.

CONFIDENTIALITY NOTE: This e-mail, and any attachment to it, may contain privileged and/or confidential information intended only for the use of the intended recipient of this e-mail. If the reader of this e-mail is not the intended recipient, you are hereby notified that reading, using, or disseminating this e-mail, or any attachment to it, is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and then delete the original and any copies of this e-mail, and any attachments to it, from your system. Thank you.

CONFIDENTIALITY NOTE: This e-mail, and any attachment to it, may contain privileged and/or confidential information intended only for the use of the intended recipient of this e-mail. If the reader of this e-mail is not the intended recipient, you are hereby notified that reading, using, or disseminating this e-mail, or any attachment to it, is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and then delete the original and any copies of this e-mail, and any attachments to it, from your system. Thank you.

CONFIDENTIALITY NOTE: This e-mail, and any attachment to it, may contain privileged and/or confidential information intended only for the use of the intended recipient of this e-mail. If the reader of this e-mail is not the intended recipient, you are hereby notified that reading, using, or disseminating this e-mail, or any attachment to it, is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and then delete the original and any copies of this e-mail, and any attachments to it, from your system. Thank you.

# EXHIBIT B



2016 Gees Mil Rd.   PH 770.200.1170
Conyers, GA 30013   Hillphoenix.com

Jason D Wright
Plant Manager                    Email:  jwright@doverfoodretail.com

February 6, 2019

Jason Taghikhani

10470 58TH ST N

PINELLAS PARK, Florida 33782

jtakracing41@gmail.com

▮▮▮▮▮▮▮▮

Dear Jason,

I am delighted to extend to you an offer for the position of  Superintendent, with Hillphoenix,
Inc. / Hillphoenix  (hereinafter, "the Company"), reporting to Jason D Wright / Plant Manager, and
based on the terms and conditions below.  As discussed, your start date will be March 11, 2019 or
sooner by agreement. You will be based in our Hillphoenix office in Colonial Heights 1925 Ruffin Mill
Rd (LOC_USA_VA010). The following is a summary of your eligible compensation and benefits for
this position, subject to the terms of the applicable plan or policy as amended from time to time:

- Annual Base Salary at the gross rate of $150,000.00 per annum. Your first salary review will be in
  the second 2nd quarter of 2010. You will be paid each week on Friday, for the period ending on
  the previous Sunday. All pay will be calculated one week in arrears.

- Target Annual Performance Bonus opportunity will be targeted at 15% of Annual Base Salary for
  the portion of the year worked for the Company. Bonuses are typically paid in February for the
  prior year. Your bonus will be prorated for the first year based on time worked. The annual bonus
  is discretionary, and is based on your individual and Hillphoenix's performance and subject to
  applicable policy, which may be amended from time to time. In order to receive this bonus, you
  must be employed by the Company on the date of payment.

- Vacation time eligibility of four (4) weeks per year. Vacation time must be earned and used
  consistent with the Company's Vacation Policy, as described in the Employee Handbook, which
  will be provided to you. Holiday, sick days, and other paid time off may also be provided to you
  consistent with the Company's applicable policies, as also described in the Employee Handbook.

- <u>Health and Welfare Plan</u> eligibility as available to similarly situated employees (for example, medical, dental, prescription drugs, vision, flexible spending accounts) and as described in the applicable plan documents.

- <u>Other Benefit Programs and Plans</u> eligibility as available to similarly situated employees (for example, a 401(k) plan) and as described in the plans or policies describing such benefits programs.

- <u>Sign-on Bonus</u>. In consideration for your anticipated continuing employment with the Company and your acceptance and execution of the Company's standard Company Employment Agreement as referenced below], you will receive a special sign-on bonus in the gross amount of $20,000.00 (less applicable taxes) to be paid out in two cyles of $10,000. First installment payable within 30 days of your start date. Second installment of $10,000 to be payable after year one.  By signing the Acceptance of Offer Letter provided below, you agree to repay the Company this amount in full should your employment end within twenty-four (24) months of your start date, regardless of whether your employment was terminated with or without cause and whether initiated by the Company or you, unless otherwise prohibited by law.

- <u>Relocation.</u> You will be assigned a relocation consultant through Dover Corporation's Global Mobility program. Once we initiate your relocation, they will contact you and provide you with a summary of your eligible benefits and the process in accordance with Dover's relocation policies. Some examples of such benefits are home finding, shipment of goods, final move expenses, etc.

This offer and compensation package is contingent upon all of the following: your representation that there are no legal prohibitions that would prevent you from performing your duties for the Company; your demonstration of your authorization to work in the United States and your continuing ability to demonstrate that you remain authorized to work in the United States; your agreement to read and conform to the rules, regulations and Code of Business Conduct and Ethics of Dover Corporation (see Our Governance tab on Dover's internet site: www.dovercorporation.com); successful background screening; successful passing of required substance abuse testing, conducted consistently with applicable Company policies for such testing; and your acceptance and execution of the Company's standard agreement including certain reasonable restrictive covenants ("Company Employment Agreement"), which is attached.

The information in this offer letter and the Company Employment Agreement is not intended to and does not constitute a contract of employment, either express or implied. Your employment is at-will, of indefinite duration, and can be terminated at any time by you or the Company. Nothing in this offer letter or the Company Employment Agreement should be construed or implied to guarantee continued employment or otherwise modify the at-will nature of your employment relationship with the Company.

If the terms herein are acceptable to you, please sign the Acceptance of Offer Letter on the following page and return to me by February 7, 2019 , retaining a copy for your records.

I am extremely pleased to offer you this position and to welcome you to the Company!  We appreciate your consideration of this offer, and I look forward to hearing back from you.  If you have any questions, please feel free to contact me.

Sincerely,

Jason D Wright

Plant Manager

## Acceptance of Offer Letter

I accept the terms and conditions as described in the Offer Letter provided to me by Hillphoenix, Inc. / Hillphoenix (hereinafter, "the Company"). In consideration of my employment, I agree to read and conform to the rules, regulations and Code of Business Conduct and Ethics of Dover Corporation (see Our Governance tab on Dover's internet site:  www.dovercorporation.com). I understand and agree that my employment is at will and therefore can be terminated with or without cause and with or without notice at any time at either the Company's or my option. I understand that this offer supersedes any previous written or oral promises regarding the terms and conditions of employment. I understand that this offer is contingent upon my representation that there are no legal prohibitions that would prevent me from performing my duties for the Company; my successful passing of required background screening; my successful passing of required drug testing conducted consistently with applicable Company policies for such testing; and my acceptance and execution of the Company's standard agreement including certain reasonable restrictive covenants ("Company Employment Agreement"), which is attached as Exhibit A.] I further verify that I have returned all property, data, and documents, whether in electronic, paper, or other form, of any former employer, customer, or other third party and that (a) I will not to use or disclose, directly or indirectly, any confidential or proprietary information that I obtained through my employment with any previous employer(s) and (b) I will inform the Company about and comply with any confidentiality or other obligations that I have to any previous employer(s) at the time hired by the Company. Finally, I agree to repay the Company in full the entire amount of my sign-on bonus in the gross amount of $20,000.00 should my employment end within twenty-four (24) months of my start date with the Company, regardless of whether my employment was terminated with or without cause and whether initiated by the Company or me, unless otherwise prohibited by law.

I understand and accept the terms of this offer:

Name: _____
Jason Taghikhani

Date: 2/7/19

## Employee Reimbursement Agreement – Relocation Assistance Program

The following form must be signed and returned to the Consultant prior to issuance of any funds related to the relocation.

The undersigned employee ("Employee") has received or will receive relocation benefits from his/her current Operating Company, a Dover Corporation subsidiary, and its successors and assigns ("Employer") to assist in moving his/her residence in connection with his/her employment. As a condition of receiving these benefits, Employee agrees as follows:

1. Employee understands and agrees that these relocation benefits are paid by Employer solely to defray bona fide expenses in connection with the relocation and may not be used for any other purpose. Employee shall provide receipts or other documentation for the expenses, as required by Employer's preferred relocation supplier.

2. If Employee receives relocation benefits in excess of the amount he/she is eligible to receive, Employee shall promptly repay the excess relocation benefits to Employer. Employee authorizes Employer to withhold such amounts from any payments that are due or become due to Employee from Employer, including, but not limited to, wages and business expense reimbursements. If Employee knowingly fails to report and repay an overpayment of relocation benefits or intentionally misrepresents the relocation benefits for which Employee is eligible, he/she may be subject to discipline by Employer, up to and including dismissal for cause, as well as legal action.

3. If the relocation benefits include home sale assistance, Employee will be asked to complete a property condition disclosure statement. Employee agrees to complete the disclosure statement accurately and completely, and further agrees to reimburse Employer for any liability, cost or expense incurred by Employer as a result of a misstatement or omission in the disclosure statement.

4. If Employee voluntarily terminates his/her employment with Employer or is terminated with cause, within 2 years after his/her effective date of transfer, Employee agrees to pay Employer for 100% of the relocation benefits received by Employee.

5. Employee authorizes Employer to deduct the above amount in Paragraph 4 from Employee's last paycheck and further agrees to sign any additional authorizations as Employer may deem necessary at the time of the deduction. In addition, Employee authorizes Employer to deduct the above amount from any other compensation and/or expense reimbursement owed by Employer.

6. Employee acknowledges that nothing in this Agreement is intended to create a contract for a fixed term of employment by Employer or to modify the at-will basis of Employee's employment.  This Agreement will be governed by the substantive law of the state of Illinois and all disputes relating to this Agreement shall be adjudicated exclusively to the state and federal courts in Illinois.

| Jason Taghikhani<br>Digitally signed by Jason Taghikhani<br>Date: 2019.03.08 13:20:00 -05'00' | Jason Taghikhani | 3/9/18 |
| --- | --- | --- |
| Employee Signature | (Print Name) | Date |

# EXHIBIT C

## Employee Reimbursement Agreement – Relocation Assistance Program

The following form must be signed and returned to the Consultant prior to issuance of any funds related to the relocation.

The undersigned employee ("Employee") has received or will receive relocation benefits from his/her current Operating Company, a Dover Corporation subsidiary, and its successors and assigns ("Employer") to assist in moving his/her residence in connection with his/her employment. As a condition of receiving these benefits, Employee agrees as follows:

1. Employee understands and agrees that these relocation benefits are paid by Employer solely to defray bona fide expenses in connection with the relocation and may not be used for any other purpose. Employee shall provide receipts or other documentation for the expenses, as required by Employer's preferred relocation supplier.

2. If Employee receives relocation benefits in excess of the amount he/she is eligible to receive, Employee shall promptly repay the excess relocation benefits to Employer. Employee authorizes Employer to withhold such amounts from any payments that are due or become due to Employee from Employer, including, but not limited to, wages and business expense reimbursements. If Employee knowingly fails to report and repay an overpayment of relocation benefits or intentionally misrepresents the relocation benefits for which Employee is eligible, he/she may be subject to discipline by Employer, up to and including dismissal for cause, as well as legal action.

3. If the relocation benefits include home sale assistance, Employee will be asked to complete a property condition disclosure statement. Employee agrees to complete the disclosure statement accurately and completely, and further agrees to reimburse Employer for any liability, cost or expense incurred by Employer as a result of a misstatement or omission in the disclosure statement.

4. If Employee voluntarily terminates his/her employment with Employer or is terminated with cause, within 2 years after his/her effective date of transfer, Employee agrees to pay Employer for 100% of the relocation benefits received by Employee.

5. Employee authorizes Employer to deduct the above amount in Paragraph 4 from Employee's last paycheck and further agrees to sign any additional authorizations as Employer may deem necessary at the time of the deduction. In addition, Employee authorizes Employer to deduct the above amount from any other compensation and/or expense reimbursement owed by Employer.

6. Employee acknowledges that nothing in this Agreement is intended to create a contract for a fixed term of employment by Employer or to modify the at-will basis of Employee's employment.  This Agreement will be governed by the substantive law of the state of Illinois and all disputes relating to this Agreement shall be adjudicated exclusively to the state and federal courts in Illinois.

Jason Taghikhani   Digitally signed by Jason Taghikhani
Date: 2019.03.08 13:20:00 -05'00'     Jason Taghikhani_____3/9/18_____

Employee Signature                      (Print Name)                      Date

# **<u>EXHIBIT D</u>**



**Dover Food Retail**
2016 Gees Mill Rd.
Conyers, GA 30013
PH 770.285.3100

anthonyintl.com
hillphoenix.com

August, 2, 2019

<u>Via hand delivery</u>
Jason Taghikhani
9920 Lumlay Rd.
Chesterfield, VA  23236

Dear Jason:

As you know, Dover Food Retail ("the Company") has paid you the following bonuses and benefits, in consideration for your anticipated continuing employment with the Company:

- A Sign-On Bonus in the gross amount of $10,000, less applicable withholdings and deductions, as described in your Offer Letter dated January 29, 2019, a copy of which is attached for your reference.
- Relocation Benefits, as described in the Employee Reimbursement Agreement – Relocation Assistance Program which you signed on March 8, 2019 copy of which is attached for your reference. The Company has to date paid you $72,513.98 in Relocation Benefits, the details of which are also attached for your reference.

By accepting the bonuses and benefits described above, and signing the relevant associated documents laying out the terms and conditions of these bonuses and/or benefits, you agreed to repay these amounts under certain conditions.  Specifically:

- Regarding the Sign-On Bonus, you agreed to repay the Company this amount in full should your employment terminate within twelve (12) months of your start date.
- Regarding your Relocation Benefits, you agreed to repay the Company 100% of the Relocation Benefits you actually received, in the event that you voluntarily terminate your employment within two (2) years of your "effective date of transfer" (i.e., your hire date).

Given that you have voluntary resigned your employment with the Company effective August 9, 2019, both of the above repayment obligations are triggered, and you now owe the Company $82,513.98. The Company has accepted your voluntary resignation with an adjusted effective date of August 2, 2019. The Company hereby demands payment of this amount. Please make arrangements to tender this payment immediately, and no later than August 9, 2019, and contact me to advise as to these arrangements. For example, you may tender the Company a check or money-order in amount of $82,513.98, payable to "Dover Food Retail" and sent to the following address:  2016 Gees Mill Rd NE, Conyers, GA  30013.

Please be advised that should you fail to repay the Company by August 9, 2019, the Company reserves the right to initiate any legal proceedings against you that may be necessary to collect the monies owed, and to seek any and all other available legal remedies that may be available (for example, our costs, interest, and legal fees associated with recovering these amounts).

Thank you for your attention to this matter.

Sincerely,

Jolene O'Brien Paver
Vice President, Human Resources
Dover Refrigeration and Food Equipment
Dover Food Retail

Enclosures